Good morning, Your Honor. If it pleases the Court, I'm C. Thomas Brown. I represent Schnabel Foundation Company in this matter. Your Honor, this case involves a single issue, fairly complex state of facts, but the question is number one, was there an occurrence under a policy, a commercial general liability policy, and then number two, whether Exclusion D, the impaired property exclusion applies. It gets a little thick, gets a little dense because the impaired property exclusion on which the insurance company bears the burden of proof incorporates several definitions and then has a lot of undefined terms. That is, the definition of property damage is included, which itself has its own definition. Your Honor, in this case, what happened was a 17-story building was being built. The site was owned by Bainbridge Construct, or Bainbridge St. Elmo LLC, a single asset entity. It had hired Turner Construction Company as the general contractor to construct this project. Turner had obtained a contractor-controlled insurance program. It was called CSIP. That insurance program is a liability program, liability insurance, which is supposed to provide liability insurance for all the various contractors who subscribe or enroll. In this case, the subcontractor, my client, Schnabel Foundation Company, was one of those enrolling members. So they were provided liability insurance, in this case by National Union. It was actually two levels of insurance. The one we're dealing with now is National Union. The primary layer of insurance was Liberty Mutual. That was already taken care of. That is, they exceeded their authority, their limits. What happened in this case, Your Honor, is Schnabel began drilling holes. This is how the construction initially starts. You have a flat lot. Holes are augured into the ground. The means and methods is left up to Schnabel Foundation Company. They augured too big of holes, and when they augured too big of holes, the site could no longer provide lateral support. What happened was the adjoining properties collapsed into the holes. The site was eventually closed down because of the damage to, or potential further damage to, the adjoining property owners. And the question is, in this case, what's covered by the liability insurance policy? The adjoining property owners sued everybody. The insurance companies, the liability carriers, stepped up to the plate, provided the defense to Schnabel and Turner and Bainbridge. However, what ultimately happened after that was Bainbridge made a claim on Turner Construction. That claim was tendered to National Union. That claim was denied. Turner settled that claim for $3 million. Everybody agrees that under this policy, New Jersey law applies. Now it becomes significant because New Jersey law has some good law on this issue. Turner then settled that, paying $3 million to Bainbridge. Turner in turn made a claim against Schnabel. That claim was tendered to National Union for defense and indemnification. That claim, or that indemnification, that tender was denied. Schnabel was left on its own. It paid $5 million to settle that case. Under New Jersey law... Can I ask you about a component of Turner's damages? I can understand why the developer would have delay damages associated with this problem, but what were the general contractor's delay damages? Well, the general contractor had delay damages, but they had other damages as well. I understand that, but I'm focusing on this delay damage. On the delay damages, your honor. For example, this project went over time limits by a year. So Turner Construction had general conditions. That is, they had to pay all their workers. They had to pay all for the construction site. So they had a year's worth of additional onsite. They paid taxes. They paid insurance premiums. Those sound like incidental damages. Is that what you're talking about? They're consequential damages. Consequential damages are something that was addressed by the Cypress Point case. So they're not delay damages? Well, your honor, delay damages were addressed by Cypress Point. That's consequential. And I don't want to get you off track. You can move on. That's fine. Thank you, your honor. The main issue in this case is the Cypress Point, if I'm remembering that case correctly. Those consequential damages were tangible damages. Mold and water damage and things of that nature. They also included loss of use, your honor, and other intangible damages. So they were collectively called consequential damages. The trial court in Cypress Point said you don't get those under the policy and applied the old law, what was called WIDO, WIDO versus Stone. And under WIDO, they said, well, hold on. The faulty workmanship can never be an occurrence under a CGL, general liability policy. And the New Jersey Supreme Court said, whoa, whoa, whoa, not so fast. Looked at the language of the policy and they said, look, the definition of triggered by an accident. An accident is something unforeseen. And the New Jersey Supreme Court in Cypress Point said, even if you intended to do the work, if the consequences were unforeseen, it's an accident, it's an occurrence. And the trial judge got that right. This is an occurrence under the policy. Where the trial court went astray is looking at the actual language of the impaired property exclusion itself. Now, we look at the impaired property exclusion. It's a pretty complex exclusion. But the burden of proof on the exclusion is on National Union. The first place the court went awry was by ruling that there had been no damage to the project site. And, Your Honor, this is a theme that runs throughout National Union's argument in their brief. And, Your Honor, it's just flat out wrong. The Cypress Point case expressly held Your Honor, that Your Honor, that The court said, quote, just like the definition of the term occurrence, the definition of property damage in the CGL policies does not differentiate between damage to the contractor's work and damage to other property. The court went on to find that faulty workmanship or defective work that has damaged the otherwise non-defective completed project has caused physical injury to damaged property. That's important because the first prong of the impaired property test that the court ruled was triggered is, quote, impaired property exclusion. This insurance does not apply to property damage. That's the definition. To property that has not been physically injured. And the court said, well, hold on. The project site, that is the site owned by Bainbridge, had not been physically injured. Your Honor, we think that the court is absolutely wrong in that regard. It was injured when it failed to be able to provide lateral support to the other properties around it. But how does that injure that property? Well, Your Honor, before any holes were dug, the property was funded. The neighboring properties were provided lateral support. We've cited in our brief both cases in Maryland and in New Jersey, which Maryland is where the project is located, that require an owner to provide lateral support to their adjoining property owners. And in this case, the site provided that until the holes were augured into the perimeter of this site. There were 160 holes augured all the way around this site. And when those holes, they were too big, the water table was too high, and those holes collapsed. And when those holes collapsed... That is just simplistic on my part, but I can see where there's damage to the adjoining properties because there's no lateral support for them. But I'm having difficulty understanding what the damage is to this property that was going to be built on. How was that property physically injured? It was physically injured when it no longer could provide lateral support to the adjoining properties. That is, these big holes were drilled and we now have a breach of the duty to provide lateral support. We have giant holes that were damaged. Mr. Brown, as I understand your argument, you're saying that in this instance, your view is that it includes suitability. Suitability is the question. In other words, you're saying it's no longer suitable as it was in terms of the site building it. That's correct, Your Honor. It could no longer support the adjoining properties. The site in the Cypress Point case is to a case called American Girl. A very similar case happened there. In American Girl, construction was done on a warehouse. The property wasn't properly filled under the warehouse and the warehouse began to settle. And the question was, well, when the owner sued the contractor and the contractor sued the subcontractor and those suits were tendered to the insurance carrier, were they covered under the policy or were they, quote, impaired property? And the court said, well, clearly that property is damaged. It will no longer support the warehouse. And the court went express... The warehouse was on that insured property. That's correct, Your Honor. So the damage was to that project. Same thing happens here, Your Honor, except that we now have the site can't support the adjoining property. Mr. Brown, part of your problem here is that you're making this argument for the first time before us on appeal. As best I can tell, you didn't make this argument below. Absolutely not, Your Honor. And let me... Absolutely not, you didn't. No, I did make those arguments, Your Honor. Your Honor, this was made, in fact, it's in paragraph 22 of the complaint. You can find that Joint Appendix 14. Failure to supply lateral support was argued in the summary judgment brief, Joint Appendix 281. It was argued damage to the project site was argued in the supplemental brief, Joint Appendix 2520. It was argued in the... another one of the briefs, 2521. And it was argued in argument to the court at Joint Appendix 2424. Your opponent, I think, suggests otherwise. We'll see what she has to say about that. I understand, Your Honor. But it's found throughout the briefs and throughout the argument. And so, Your Honor, we've made this argument. I understand that they say I haven't. But, Your Honor, if we look at the Joint Appendix, at those citations, you'll see it's made. In fact, it's right in the complaint. So, Your Honor, the first question is, has this been, is this property that has not been physically injured? And the definition of physical injury isn't found in the policy. It's got a lot of defined terms, but that's not one of them. So, we have to go find what does injury mean? And injury means made less useful. So, this project or this property was made less useful once these holes were drilled. They were not able to supply lateral support to the adjoining properties. The next place the court made an argument, Your Honor, was it then focused on impaired property. And that is the insurance doesn't apply to property damage to impaired property arising out of defect or deficiency inadequacy in your product. Let me just jump right to it since my time is running. The definition of impaired property states that impaired property means tangible property other than your property. So, it has to be something other than the work that you're working on that cannot be used or is less useful because it incorporates your product or your work. In this case, it then goes on to say, but only if, the only if I added, but it says, if such property can be restored to use by the repair, replacement, adjustment, or removal of your product, property, or your work. And in this case, that's where it fails. And, Your Honor, the progeny of Cypress Point, fibro-animal vaccines, and USA Container, both of those cases focus on that problem. That is, if we remove the work that was defective, can the property be restored to its prior use? And fibro, it was a vaccine. They gave vaccines to chickens. It kept the chickens from getting sick, but it also stunted their growth. If you waited long enough, the chickens would grow, but the growers of the chickens said, look, this is causing us damage. It's property damage. And the court said, that's a jury issue. It's a jury issue as to whether the withholding of the vaccine is something that can restore these chickens to their prior growth. In this case, Your Honor, the damage that occurred had nothing to do with the support of excavation. That is, the pilings that were put in. They weren't repaired. They weren't replaced. They weren't altered. There was nothing done to them. The damage was done because the holes that were drilled were too big. And then the pilings that were placed were placed with vibratory hammers. It was labor. It was the process. You can't remove the process. And, Your Honor, it just does not trigger the repair, replacement, adjustment, or removal of your product. And if it doesn't trigger that, if it can't be replaced, or excuse me, if the project site can't be restored to use by repair, replacement, adjustment, or removal of the work done by Schnabel, it doesn't meet the definition of impaired product. But ultimately the site was repaired, right? Well, Your Honor, what happens is this. The support of excavation is placed in. The county said you have to do additional work. That is, you have to put on what are called toe breakers. They had things that are holding the walls up. You had to put in berms. They had to put in some earth and berms. Once the project is built, those are removed. That is, the additional support was removed. But all of the sheeting and shoring that was put in place, it's still there. It hasn't been removed. It hasn't been replaced. Nothing's been done to it. It hasn't been changed one iota. From a factual point of view, Your Honor, it just doesn't trigger this bell. And the reason it doesn't trigger it is because it wasn't the product that was the problem. The problem was the means and methods by which it was installed. These holes were too big. And you can't unring that bell. You can't go back and fill the holes in. So where's the means and method exception in this insurance policy? There's no means and methods, Your Honor, but the property wasn't restored to use by anything that was done to repair, replace, adjust, or remove my client's product. None of those were done. And if none of those are done, it cannot meet the definition of impaired property. So for those two reasons, Your Honor, first, this is property that has been physically injured, so it doesn't meet the first prong of the impaired property exclusion. And the second prong, Your Honor, is it does... I see my time is up. Your Honor, would you like me to... You may continue. Your Honor, it doesn't meet the last, that is, the definition of impaired property. The impaired property exclusion has two clauses. One, it says applies to property damage to impaired property. And two, property damage to property that has not been physically injured. Thank you, Your Honor. I've reserved some time to... Thank you. Thank you. Ms. Repath. Good morning. May it please the Court. Miguel Repath on behalf of the Appalachian National Union. You've heard a lot from Mr. Brown about why Exclusion D supposedly bars coverage in this case. And he's wrong. And I'm going to explain to you all the reasons that he's wrong. But first, I'd like to back up, take a step back, and start at the start. Because it's important here that the judgment is not only the right result, but the right result for the right reason. Because you don't even get to Exclusion D unless you first find that there is some quantum of damage that is covered under the insuring agreement in the first place. And that's not true here. And that's where the district court got to the right result, but not quite for the right reason. So under the insuring agreement, this is an occurrence-based policy. And the touchstone for coverage under occurrence-based policy is an accident. And what that means is that the damage has to be unforeseeable, unanticipated, from the perspective of the insured. So here, Schnabel is a sheeting insuring contractor who was hired to provide a support of excavation system. So from Schnabel's perspective, it knows. It expects at the outset. And if it doesn't perform its work correctly and the project, it doesn't provide a functional support of excavation system, it knows that the project is probably going to get shot down while it has to fix its work. The sheeting insuring work is sort of like the first deck, the first card in the deck of cards. Nothing else can go on until the sheeting insuring work is correct. So from Schnabel's perspective, it knows and it expects that if it doesn't do its work correctly, there's probably going to be a shutdown and there's probably going to be consequential damages associated with that shutdown. So these types of damages that Bainbridge and Turner incurred, maybe they're not, of course, wanted or hoped for by Schnabel, but they are certainly the natural and foreseeable consequence of its faulty workmanship. That's not an accident. And to show you an illustration of what is an accidental process. Your position is that because something is foreseeable it makes it not an accident? If the result is the natural and ordinary consequence of faulty workmanship, that's not an accident. That is how the policy... So you mean if you're driving a car exceeding the speed limit and you have a collision, that's not an accident because you know that speeding will cause an accident? If you know, if it's expected that your speeding is dangerous and that can cause an accident, you just said it caused an accident, didn't you? So you just answered the question, it is an accident. If the harm that results is unpredictable. The harm is that someone was injured physically, but that doesn't make it not an accident because you knew that speeding can cause an accident, I mean can cause injury. What you're saying, every contractor goes to a project knowing that if they don't do their work, the project is not going to be successful. Things they do in the process of completing it can't be an accident solely because of their expectation of success and knowing that if they're not successful, it won't be a good project. That can't be. That would turn logic on its head, wouldn't it? But the policy draws a line between there are certain things that are, as a matter of law, natural and foreseeable consequences and certain things that aren't. And Cypher's point is a great case to illustrate this point. There the court said it's third party property damage that is accidental in nature. Now the third party property damage, the only third party damage that occurred here, was to the neighboring property owners. Not to Turner and Bainbridge, who were the owner and general contractor. They're not third parties. We'll get to that, but first you started with your tactical question whether or not there was an occurrence and you said it's not because of an accident. Let's deal with that first. That's going further on in terms of that, but you're still in your position because they knew that they had to do this right, sheeting and shoring correctly, that what they did thereafter could not be an accident. Well, it depends on what type of damage you're talking about. If we're talking about... We're talking about augering too broadly in the land and the holes being too big and therefore the lateral aspect of what you're creating can't support the weight that's downward that's the adjoining property. It's just a matter of engineering in terms of shifting the weight in the time because the building has footprint, but it depends on what's next to it. Right there, you lost that, so therefore it starts heaving in. That's not usual. The heaving is occurring next door and that is accidental. That is not foreseen, but what is the natural and ordinary consequence of bad sheeting and shoring work is that you can foresee that the project is going to get shut down while your work has to be corrected and that the owner and the general contractor are going to incur certain economic losses as a result of that. Let's say, for example, the auger the diameter should have been, let's say 20 feet and they knew that, but someone made a mistake and calculated and put 25 feet mistakenly on and therefore the machine just kept going and going and did a 25 feet diameter rather than 20. You're saying that can't be an accident? You have to look at what the resulting damage is. I just gave you my example. If the damage was they did a 25 feet diameter in the adjoining buildings, he did. So yes, the damage to the adjoining properties is accidental. The damage to the project site itself is not accidental. And remember that one act of faulty workmanship can result in disparate damages. This is why we always have to parse damages between covered and uncovered damages. Well, but you don't parse accident, though, I guess is the point. The definition here is accident that causes property damage that is not expected or intended from the standpoint of the insured. So you have to look at the type of property damage that you're talking about. What is the resulting damage? Sometimes it's accidental if it happens to the neighboring properties, and sometimes it's not accidental. In this case, you just have to understand it. This is a lot. What would happen if there had been some beginning of structural work on the lot, and they were digging these holes underneath of it, and then what was built up above collapsed? Does that change your view of what's an accident? If we're still talking about the project itself, no. You get to the same result. Because you have to remember, this is a wrap-up policy. What the insured risk is under a wrap-up policy is the risk that the project site itself, the project itself and everybody working on the project, is going to cause damage to third parties outside the project, to people outside that world. What is not covered under a wrap-up policy is damage to the project itself caused by people working on the project inside the project. That is the boundary. Those type of damages are covered under, for example, like a builder's risk policy, which is exactly why CNA, who issued the builder's risk policy here, paid these damages, paid some of the delay damages and other types of consequential damages that Bainbridge and Turner sustained. There are multiple risks that can occur on a project site. There are different products, insurance products, to cover each type of these risks. The wrap-up policy doesn't cover every single type of risk that a contractor or subcontractor faces in doing its work on the project site. That's where the boundary is drawn. That's what we see in the Cypress Point case, where the court said the risk covered is liability to third parties. There aren't any third parties involved in this case. Only the property damage to the neighboring properties, which we paid, the National Union paid, to the tune of $9.2 million in policy proceeds to them. That's what we covered, and that's what we paid. We don't cover delay damages and consequential damages to the owner and general contractor. Let's just assume there is an accident for purposes of coverage under the policy. What about the exclusions? If you want to assume that there is some quantum of covered damage, then exclusion D would apply to be a total bar to coverage. One thing I want to mention up front, and I would like to correct a misimpression I think I saw in Schnabel's reply brief. They said, well, even if we can't show impaired property, we can still show the other prong of the exclusion property not physically injured. No, that is wrong. Exclusion D is framed in the disjunctive. It applies and bars coverage when there is either impaired property or property that has not been physically damaged. That means for the exclusion to apply, National Union only has to prove one prong. They, Schnabel, have to prove both prongs are inapplicable to escape the exclusion. I just want to make that clear up front. I'd like to jump right away, I guess, to the second prong of the exclusion that Judge Diazio addressed on the property not physically injured. Schnabel didn't raise that prong of the exclusion in its original summary judgment motion before the court. They focused only on impaired property. At the hearing on the summary judgment motion, where the judge said, well, this looks to be a total bar to coverage, they said, hey, can we do a supplemental letter brief? At that point, belatedly, they raised that prong of the exclusion. Before the district court? Before the district court. So the court had an opportunity to address that? Yes. Correct, but they raised it after the summary judgment brief. So belatedly. But they raised it, nevertheless, before the district court. But what they said was for purposes of the insuring agreement  the loss of use here is the project site, the site that is not physically injured. And that's at page 269 of the joint appendix in their summary judgment motion, where they admitted the site was not physically injured. And they were admitting it, of course, for purposes of the insuring agreement. Now they can't just switch it up and say, well, for purposes of the exclusion, no, I want to take the opposite position. In fact, they prevailed on that position before the district court, who adopted that position and said, yeah, it's loss of use of the site. The site is not physically injured. So now that they've prevailed on that position, how can they now reverse that position and say, no, no, just kidding, it wasn't really physically injured at all. So what Schnabel, the only thing that Schnabel has pointed you to to show physical injury is its own work. That's not third-party property damage. That's not damage to the site. That's just its own work. That is the faulty work. That's not something that their holes caving in caused damage to the project site. That's their own work. That can never qualify as physical injury. These are two separate things that we're talking about. To go back to the first problem... But doesn't that go back to accident, as we assume for the sake of this second argument, that with accidents established, I think Judge Agee framed it and you took it on in that sense. Well, even though it's their work, but it's an accident. Okay, well, if you're assuming that there's an accident for purposes of showing third-party property damage, then what the third-party property damage is, is the damage to the site, the loss of use of the site. Remember, this exclusion D only applies when there's pure loss of use property damage. So, if you assume, based on this construct that we're talking about, that the site itself is the property damage, then it can't be damage to Schnabel's own work that constitutes the physical injury. No, the physical injury they're saying is the diminution in the value of the suitability of the property itself. That's what they're arguing, correct? I'm not quite sure what they're arguing, because they're flipping positions quite a bit. Well, they argued that it was no longer in terms of the suitability of sustaining the weight load of adjoining properties, and that's what happened. They had to then shut down until they could do it correctly. The only reason that is true is because Schnabel didn't do his work correctly. That's the only injury, physical injury. That's what people have insurance for, because they don't do things correctly. They never buy insurance. Well, I drive. I try to drive carefully, but I got insurance because I might not. There's first and third party insurance, but here we're talking about third party insurance. A third party policy is never, ever, ever going to cover the damage to the insured's own work. That's why they get a performance bond. That's why they get builder's risk policy. Never is a CGL or accident... Did your policy clearly say that? You stated it so well there. Does the policy say that in plain language? We will never cover anything that you do on anything but only covering someone who's a non-owner and third party. Does it say that clearly? It doesn't say that in those exact words. I don't know why it didn't, because you said it's so obvious now. It looks like you write your contract that way so people can know if they're going to pay you a premium. We do write our contract that way. Tell me in your policy, where does it say that in plain language? We are never going to pay you for anything that you do on this property. It's only for somebody else. Tell me where that is in the prop. I like to see that because we have all these insurance cases. It's amazing. Simple English, people can make a decision. You know what? I don't want that insurance because it's not going to cover anything that I do. Your own work. Can you show me that? Can you just point to it so I can look at it? Can I give you two examples? First of all... I don't want an example. I just want tell me where it says that in plain English. We have years of cases that are construing accident-based... That's the problem. I understand. I'm sympathetic with what you're saying, but it's not about case law. It's about pure contract and making it simple. I'm just asking you this. I know there's plenty of case law that has made it confusing. I guess that's why lawyers get paid to do that. Show me in your contract. You wrote the contract, correct? That's right. Point to me where it says in simple language that you are not going to cover anything that you do at all on this site. It's only for third parties. Tell me where it is. We can see it in the occurrence definition, which refers to accident and things that are neither expected nor intended from the standpoint of the insured. This all connotes third-party liability. We also have the language in the insuring agreement that we'll pay sums that the insured becomes legally obligated to pay as damages by reason of liability imposed by law. That again connotes third-party property damage. We cited a case in our brief, Edward Lesky, that held this means third-party. Let me take you back to the Cypress Point case. The Cypress Point case had the same policy language. It didn't say, hey, we're only going to cover third-party property damage. It didn't say that in those words either. But you know what? The New Jersey Supreme Court had no problem finding that this language that I cited to you means third-party liability. They said the purpose of a CGL policy, an occurrence-based policy, is to protect businesses against liability to third parties. So it doesn't say it exactly in the way that you have said it. Surely it would have been easier if it had. But the use of things like accident, liability imposed by law, and years of judicial opinions constrained policies in this manner shows this is a third-party liability risk. That's why you need to get a performance bond, and that's why you need to get builder's risk policy if you want coverage for your own benefit. So under that holding, you never get to the exclusions because the policy just doesn't cover it? That's correct. It just doesn't fall within the insuring agreement in the first place. You don't even need to get to the exclusion. Why don't you wrap up by telling us why the exclusion applies? So the exclusion applies for the very simple reason that I know it's long and it has defined terms, but basically what the exclusion is meant to cover coverage for is if the insured's bad work is incorporated to a larger structure and needs to be fixed, and during the downtime, the larger structure can't be used, and the owner incurs losses, then that is the type of exclusion, this is the type of risk that would not be covered under Exclusion D. And that's what we have here, to put it very simply, is that Schnabel did bad work on the supportive excavation system. It could be and was fixed. The site was down for a period of time. As I understand opposing counsel's argument, which I may or may not, it is that while we didn't go back and fix these particular holes that were too big, we dug more holes, and we put up different shoring, and that that's not repair or adjustment to what we did originally. That's something different. Is that how you understand their argument? That is how I understand their argument, and that's conceptually completely wrong. Because they're saying, well that's not adjustment, that's not repair, that's something totally new. No. The original goal and the original contract was to provide a functional support of excavation system. Schnabel didn't do that. So you know what, under their contract with Turner, they had to do a do-over. I'm sure from Turner's perspective, they didn't say to Schnabel, well try your best, and if you don't succeed, that'll be fine with us, we'll pay you again. No. The end goal was always the same. It wasn't a new project. It was simply Schnabel being forced to do what it should have been done in the first place. That's not new, that's not supplemental, that's repair, that's adjustment. And in fact, it worked. The supportive excavation system became functional after all those adjustments, provided lateral support, the county permitting department lifted the stop work order, the project went on, the project was completed. That is exactly the sort of situation that the impaired property exclusion is intended to apply to. In my last moments, I'd just like to make one final point. It's important here not only to reach the correct result, again as I said, but the fair result. Remember, Schnabel here got a $4.25 million settlement from CNA and used that money to fund almost all of its settlement with Turner, leaving it out of pocket, just $750,000. If you award Schnabel what it's asking for, which is the combined $8 million settlement value of Bainbridge and Turner, they're not only going to break even on that money, they're actually going to make a more than $7 million profit off their own bad work. That's not fair, that's not just, that's not equitable. For that reason, the district court said this is the correctly reached, the right result based on the policy language and New Jersey law, but perhaps just as importantly, the district court reached the only fair result, which is that you don't get a bonus for doing bad work. And respectfully, this court should find the same. For these reasons, we ask that the court affirm the judgment. Thank you. Let me take it one step at a time. Occurrence is defined as something that's unforeseen and unforeseeable. Let me just give you the language itself. Definition of occurrence is an accident. The accident isn't defined, and so the courts say, look, we go to the dictionary definition of what's an accident, and it's something that's unforeseeable at the time. That is, in this case, if you look at the testimony of Dr. Ludwig, who said, we had no idea that we were going to have these collapsing holes. He attributed it to high water tables that they didn't anticipate and to voids underneath the property. Mr. Brown, I don't want to cut you off, but I guess I am to some degree. You don't have much time. You've argued that, I think, very aptly. I think we understood that. But your worthy colleague says that the insurance was never meant for you. You paid premiums for an insurance for someone else, the insurance wasn't even meant to be there. Whether it was an accident or not is of no moment. When you asked her that, and she said, the New Jersey courts have made that clear, and therefore your client should have known that when they purchased and paid premiums for it. That's what she said. I understand that's what she said, Your Honor. Well, then you need to respond to it, because that's the sine qua non, isn't it? It is, Your Honor, and I would say just the opposite. My clients paid a premium. That is, they paid for this liability policy. They anticipated that if something unforeseen happened, an accident occurred, that they would be covered, that they would tender a defense if a claim was made against them, which they did. They figured their insurance company would step up to the plate, which they have an obligation to do. Cypress Point changed the law in New Jersey. Prior to Cypress Point, the law was defective workmanship couldn't be an occurrence under a liability policy. There was a sea change in 2016. Cypress Point said, hold on, that doesn't jive with the current language used in these policies. The exact same language the National Union uses. And they said, in this case, there is an occurrence if it's an accident, number one. Number two, the damage can occur to the actual project. It doesn't have to be third-party damage. That is, when holes are drilled into a piece of property owned by Bainbridge, which is under contract to Turner Construction. Those holes cause damage to that property so that it cannot sustain lateral support to the adjoining property owner. Bainbridge, the owner, makes a claim and says, you damaged my property. And Turner makes a claim and says, you damaged the property that we're working on. Those claims were tendered to National Union. We paid for National Union to defend us and have an obligation to do so. We all agreed, in this case, the attorneys, that New Jersey law applies. And New Jersey law brings us Cypress Point. It brings us Fibro-Animal Hospital, the progeny of Cypress Point. And those cases say, look, if there's an issue as to whether this is project damage and Fibro-Animal Hospital, the vaccine case, weird case. But they said, that's a jury issue. The court can't dispatch this case at summary judge. It's doing a disservice to my client, who is, I guess, that is all issues viewed in a light most favorable to him. And they paid for this insurance. Now, this insurance company could have said, look, if there are claims between different insurers, that is, you're all insured under this policy. Bainbridge is an insurer. Schnabel is an insurer. Turner is the named insurer. They could have put in an exclusion that said, we're going to exclude claims among insurers. They didn't do that. I see them in cases and policies all the time. That's not there. Instead, what they put in is a separation of insurance clause. And it said, if any claim is made, we're going to look at just you, are insured independently of whether you're insured and somebody else is insured. The separation of insured claim says to my client, you're going to be covered if another insured under this policy makes a claim against you. And here, National Union deprived them of a defense. And when they do that under New Jersey law, and my client settles, he's out of pocket $5 million. Turner is out of pocket $3 million. When they settle, those become the damages, as long as they're not collusive. And there's no indication anywhere in the record that this was somehow collusive. These were real claims that were really settled at a discount. So, Your Honor, I would say to you that the New Jersey law and the Cypress Point case and the fibro-animal hospital case, or animal vaccine case, those two cases answer this case all the way. And I think the trial court went back to the prior law saying, well, just generally, occurrences can't cover faulty workmanship. Law has been changed, 2016. I see my time is up. Thank you. In fairness, I did may have changed the trajectory of your question and your argument. Do you have 30 seconds to say something else that you were going to say before the last? Your Honor, I would put this. They could have clearly excluded this. They could have clearly excluded claims. They didn't do it. What's not in the policy speaks as much as what's in the policy. Schnabel didn't have to prove anything in this case. That is, this is an exclusion. National Union bears the burden of proving it. And she's right. These are two alternative clauses. Either property that was not damaged, not physically damaged, and we think it has been physically damaged, or impaired property, and it can't be impaired property because it can't be restored to use by repair, replacement, adjustment, or removal. And it can't, and it's not property not physically damaged because the Bainbridge site hasn't been physically damaged. So, Your Honor, we contend an exclusion deed doesn't apply. We'd ask the court to remand the case. There are other exclusions that they relied upon that the court didn't reach. Thank you, Counsel. Yes. Thank you. We're going to come down, greet Counsel, and then take a brief recess. This Honorable Court will take a brief recess.
judges: Roger L. Gregory, G. Steven Agee, Albert Diaz